# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALAN YOCOM,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF TULARE, et al.,<br><br>　　　　　Defendants. | Case No. 1:17-cv-01643-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING ACTION AS A SANCTION AND DENYING PLAINTIFF'S REQUESTS FOR INJUNCTIVE RELIEF<br><br>(ECF Nos. 7, 8, 10, 16)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**I.**

**PROCEDURAL HISTORY**

Plaintiff Michael Alan Yocom, a pretrial detainee proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed a complaint on December 7, 2017, along with an application to proceed in forma pauperis by a prisoner. Plaintiff did not include a certified copy of his trust account statement showing transactions for the past six months as required. So, on December 11, 2017, an order was filed denying Plaintiff's application to proceed without prepayment of fees without prejudice and directing Plaintiff to file an amended application which included a certified copy of his trust account statement showing transactions for the past six months or pay the filing fee within forty-five days.

On February 7, 2018, after Plaintiff did not pay the filing fee, file an amended application

1

to proceed in forma pauperis, or otherwise respond to the December 11, 2017 order, the court issued findings and recommendations recommending this action be dismissed for Plaintiff's failure to pay the filing fee or demonstrate that he was entitled to proceed in this action without prepayment of fees. On February 22, 2018, Plaintiff filed objections to the findings and recommendations. In his objections, Plaintiff stated that he sent back the in forma pauperis form signed by Deputy Gomez with a certified copy of his inmate account statement for the last six months. However, the Court has no record of having received this document. The Court vacated the findings and recommendations. Plaintiff was ordered to submit an amended application within thirty days of February 23, 2018.

On March 27, 2018, Plaintiff filed a second application to proceed in forma pauperis as well as a motion for injunctive relief. Plaintiff's application was not compliant with the February 23, 2018 order as he did not attach a copy of his trust account statement showing transactions for the past six months. On March 29, 2018, an order issued providing Plaintiff with thirty days in which to submit an application to proceed in forma pauperis that complied with the Court's prior order. On April 11, 2018, Plaintiff filed a second motion for injunctive relief. Upon review of Plaintiff's application to proceed in forma pauperis, the Court had concerns regarding the authenticity of the certification on the document. On April 16, 2018, the Court set a hearing to address issues with Plaintiff's application to proceed in forma pauperis in this action.

A hearing on Plaintiff's application to proceed in forma pauperis was held on May 1, 2018. Plaintiff appeared in custody and pro se. Counsel Kathleen Taylor specially appeared for the County of Tulare. Based on Plaintiff's testimony at the hearing, counsel was directed to submit supplemental briefing on whether there is a Deputy Woodfard or Woodford working at another detention facility in Fresno County and whether Plaintiff was receiving medical care.

On May 8, 2018, County of Tulare filed supplemental briefing.

## II.

## LEGAL STANDARD

Federal courts have broad powers to impose sanctions against parties or counsel for improper conduct in litigation. The Court derives the power to impose sanctions on parties or their

2

counsel from three primary sources of authority, "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). "A district court's use of sanctions is limited by two standards: (1) any sanction must be just; and (2) it must specifically relate to the particular claim at issue in the [] order." Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc., 727 F.2d 1470, 1474 (9th Cir. 1984).

### A. Rule 11

Rule 11(b) of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;. . . [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ." Rule 11 imposes an objective standard of reasonableness, which applies to pro se litigants. Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 892 F.2d 802, 811 (9th Cir. 1989).

Rule 11(c) provides for the imposition of appropriate sanctions for a violation of Rule 11(b) on any attorney, law firm or party that has violated the rule or is responsible for the violation committed. Any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R. Civ. P. 11(c)(4). Whether to impose sanctions is determined by the reasonableness of the inquiry into the law and facts. G.C. & K.B. Investments v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003). "An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed. R. Civ. P. 11(c)(6).

### B. Inherent Power

The Court has inherent power to sanction parties or their attorneys for improper conduct.

3

Chambers v. Nasco, Inc., 501 U.S. 32, 43-46 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Fink, 239 F.3d at 991. This includes the "inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Anheuser-Busch, Inc. V. Natural Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (quoting Wyle v. R. J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983)); see Combs v. Rockwell Intern. Corp., 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate sanction for falsifying deposition"). "Dismissal is a permissible sanction only when the deception relates to the matters in controversy, and because dismissal is so harsh a penalty, it should be imposed only in extreme circumstances." Wyle, 709 F.2d at 58. "It is well settled that dismissal is warranted where . . . a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings. . . ." Anheuser-Busch, Inc., 69 F.3d at 348.

### C. Dismissal as Sanction

In determining whether to dismiss an action for failure to comply with a pretrial order, the Court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (internal quotations and citations omitted). These factors guide a court in deciding what to do and are not conditions that must be met in order for a court to take action. In re PPA, 460 F.3d at 1226 (citation omitted).

### III.

### DISCUSSION

Upon review of the application to proceed in forma pauperis that Plaintiff filed on March 27, 2018, the Court found several areas of concern. The certification section of the March 27, 2018 application did not appear to have been completed by the institution, although there is a "signature" of an authorized officer included. Specifically raising questions as to the authenticity of this certificate is the amounts that are stated for Plaintiff's account. The statement certifies that Plaintiff has 14 cents. It also states that the average balance over the past six months was 14 cents

and that the average monthly deposits have been 14 cents. These amounts, as well as the manner in which they are set forth, do not appear to be what the Court regularly sees in reviewing such statements. Further, the handwriting appears to be identical to that of Plaintiff. Causing additional concern is the "signature" of the authorized officer. The signature is spelled Woodfard" on the first page of the document. The second page has the name printed as "Deputy Woodfard" and it is signed "Woodford." Again, this handwriting appears to be identical to that of Plaintiff. To address the concern that Plaintiff may have falsified the certification on the application to proceed in forma pauperis the Court held an evidentiary hearing on May 1, 2018.

The County of Tulare presented the testimony of Lieutenant Garza. Lieutenant Garza is a Facility Commander at the Bob Wiley Correctional Center. He checked the records for the Bob Wiley Correctional Facility and there is no deputy Woodfard or Woodford working at the facility nor was there such a deputy in March of 2018. An inmate is able to obtain the amount in his trust account by asking an officer at the facility for the amount. The amounts set forth on the in forma pauperis application on the form are correct as Plaintiff has had $.14 in his trust account for the past six months, but the signature is not that of any officer at the Bob Wiley Correctional Center.

Plaintiff testified that he has multiple health problems and he is not receiving any health care. Plaintiff seeks for the court to order reconstructive surgery on his elbow and contends that due to the injuries to his arm he is not retaining fluids. The Court notes that Plaintiff appeared to be in good health. He was articulate and not in any distress. The Court did notice that Plaintiff has very limited movement in his right arm.

Plaintiff testified that Deputy Woodfard could have been a pretrial deputy. Plaintiff had the deputy sign the certification where he is housed in administrative segregation. Another inmate gave him the document and told him it would probably work. The other inmate was trying to do the same thing. The other inmate had another type of in forma pauperis form.

Plaintiff testified that the deputy wrote in $.14 and that the deputy signed the in forma pauperis form. The third page is the document the other inmate gave him. The deputy also filled out the third page. Plaintiff testified that the deputy was a Pretrial Unit 1 deputy at one time. He was middle aged Caucasian man with brown hair and medium build.

1 | Lieutenant Garza testified that he did not know if there was a Deputy Woodford or Woodfard working in the Pretrial Unit at the Tulare County Jail. To address this issue and Plaintiff's allegation that he was not receiving medical care of life threatening conditions, the Court requested that the County of Tulare file supplemental briefing.

Lieutenant Garza filed a declaration in which he verified that the only deputy with a name similar to that on the certification filed by Plaintiff was Deputy Scott M. Warford. (ECF No. 16-2 at ¶ 3.) Lieutenant Garza spoke with Deputy Warford and showed him the form filed by Plaintiff in this action. (Id. at ¶ 4, 7, 8.) Lieutenant Garza also checked the documents regarding movements of inmates and deputies on March 1, 2018, and there are no documents that suggest that Plaintiff was transported to the pre-trial facility where Deputy Warford works on that day or that Deputy Warford entered Bob Wiley Unit Three that day. (Id. at ¶ 9.)

The County has submitted the declaration of Deputy Scott M. Warford. (ECF No. 16-1 at 1-2.) Deputy Warford declares that he is familiar with Plaintiff Yocum and was on duty on March 1, 2018. (Id. at ¶ 3.) However, he does not recall going to the Bob Wiley Detention Center on March 1, 2018 or coming into contact with Plaintiff on that day. (Id.) Deputy Warford reviewed the in forma pauperis application and states that it is not his signature on the forms. (Id. at ¶¶ 4, 6, 7.) Deputy Warford stated that there are no entries on the form in his handwriting. (Id. at ¶ 8.)

For the following reasons, the Court finds that the certification filed by Plaintiff is fraudulent. While the amount that is stated to be in the account is $.14, the certification states that there have been monthly deposits averaging $.14 for the last six months. However, based on the testimony of Lieutenant Garza, Plaintiff has had a balance of $.14 for the last six months. Were there to have been deposits to the account the total amount in the account would have been increasing.

Further, Deputy Warford has declared that he did not complete the form and it is not his signature on the form. Review of the form itself support this as the name on the form is spelled "Woodfard" and "Woodford". Finally, the handwriting on the form is not similar to Deputy Warford's signature on his declaration, but is consistent with Plaintiff's handwriting.

Plaintiff's conduct in filing a fraudulent application to proceed in forma pauperis violated Rule 11. The Court finds that Plaintiff's filing a fraudulent certification was an attempt to willfully deceive the court, and was "conduct utterly inconsistent with the orderly administration of justice." Anheuser-Busch, Inc., 69 F.3d at 348. Such conduct justifies the issuance of sanctions "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

### C. Sanctions

Having found that Plaintiff submitted an application to proceed in forma pauperis in bad faith, the Court turns to the propriety of dismissal as a sanction.

Initially, Rule 11 explicitly applies to pro se litigants and the express goal of Rule 11 is deterrence. Warren v. Guelker, 29 F.3d 1386, 1390 (9th Cir. 1994). Pro se litigants must follow the same procedural rules that govern other litigants. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) overruled on other grounds by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012). Therefore, the fact that Plaintiff is proceeding pro se does not insulate him from the imposition of sanctions for his misconduct in prosecuting this action. While a litigant proceeding pro se is not held to precisely the same standards as an attorney, filing a falsified certification in support of his application to proceed in forma pauperis would violate the standard for any litigant. Willful and bad faith conduct will not be excused because Plaintiff is representing himself in this action.

This case has been pending since December 7, 2017, and the delay in these proceedings is due to Plaintiff's conduct. Plaintiff was ordered to file an application to proceed in forma pauperis on December 11, 2017, which included a certified copy of his trust account statement and has yet to comply. The expeditious resolution of litigation and the Court's need to manage its docket weigh in favor of dismissal. The Court has an enormous caseload, and when litigants file fraudulent documents, the Court's ability to manage its docket and guide cases toward resolution is significantly compromised. In re PPA, 460 F.3d at 1227. However, the delay in this action to date has been less than six months, therefore the Court finds that this factor does not weigh in favor of dismissal.

As for the risk of prejudice to Defendants, there is no identifiable prejudice in this instance. See id. at 1227-28.

Regarding the fourth factor, while public policy favors disposition on the merits and therefore weighs against dismissal, it is Plaintiff's own misconduct which is at issue here and which has stalled the case. See id. at 1228.

Finally, the Court considers whether there is a less drastic alternative sanction available. Monetary sanctions are not available given that Plaintiff is incarcerated, has $.14 in his trust account, and has testified that he does not have any funds nor does he have access to funds to pay the filing fee. Since Plaintiff has no funds available, imposition of monetary sanctions would be of no consequence. As Plaintiff is in custody the Court is unable to order other sanctions, such as requiring community service or having Plaintiff serve time in custody for his fraudulent conduct. The Court could simply disregard the fraudulent certification filed in support of the application to proceed in forma pauperis, however allowing Plaintiff to continue this action would not deter repetition of such conduct or comparable conduct. Such a course would simply place Plaintiff back in the same position he was in, without the fraudulent certification. Therefore, the Court finds that lesser sanctions are not available and recommends that this action be dismissed as a sanction for Plaintiff's conduct of filing a fraudulent certification in support of his application to proceed in forma pauperis.

### D. Motions for Preliminary Injunction

Plaintiff has filed two motions for a preliminary injunction seeking medical care. Plaintiff asserts that he is being tortured by being held in solitary confinement without any medical care for eighteen months and that he requires lifesaving medical care. (ECF No. 8.) Plaintiff contends that he is being tortured to death. (ECF No. 10 at 1.) Plaintiff states that he has a broken right arm and left elbow and is being denied medical treatment for a fractured skull, torn throat and ruptured sternum with hemorrhaging stomach and bowels and is unable to retain fluids. (Id. at 4.) Due to Plaintiff's allegations that he is being held in conditions that are threatening his life due to the denial of medical care, the Court requested that the County of Tulare file supplemental briefing addressing the issue.

1   County counsel has reviewed Plaintiff's medical records which she states are extensive and indicate that he has substantial medical and mental health issues. (Decl. of Kathleen Taylor ¶ 3.) Counsel declares that Plaintiff has been regularly seen by medical staff while in custody and recently was seen on hunger strike monitoring. (Id. at ¶ 4.) On April 20, 2018, Plaintiff refused to have his temperature and weight checked and, although he accepted his medication, he refused offered liquids. (Id.) Plaintiff was most recently examined by a physician's assistant on April 24, 2018. (Id.) Examination was generally unremarkable and labs and medication were ordered. (Id. at ¶ 5.) Plaintiff refused testing. (Id.) Plaintiff has an abdominal ultrasound scheduled for May 4, 2018. (Id.) Plaintiff's medical chart was reviewed by a physician on April 30, 2018 to evaluate and recommend further treatment. (Id. at ¶ 7.) Counsel states that the medical records clearly reflect that Plaintiff is being frequently seen by medical staff. (Id. at ¶ 8.)

While Plaintiff alleges that he is receiving no medical care and is being confined in life threatening conditions, based upon observation of Plaintiff's physical condition at the hearing and counsel's declaration, the Court finds Plaintiff's allegation that he is in imminent life threatening danger to be not credible. While Plaintiff may have limited mobility of his left arm, there were no other indications that Plaintiff was suffering from any life threatening medical issues during the hearing and he appeared to be articulate and in no acute distress.

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). In Winter, the Supreme Court held that "[a] court may grant a preliminary injunction only if the plaintiff establishes four elements: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable harm absent a preliminary injunction; (3) the balance of equities tips in plaintiff's favor; and (4) injunctive relief is in the public interest." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015); Leigh v. Salazar, 677 F.3d 892, 896 (2012).

Further, federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454

U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

Here, although Plaintiff's complaint has not yet been screened, the Court shall review it to determine if Plaintiff has stated a claim that would provide for granting the relief requested. Plaintiff brings this action against the County of Tulare, City of Porterville, Deputy Reuter, and Officer Sokoloff alleging that on August 28, 2016, excessive force was used when he was shot in the head and backside of his body several times by Deputy Reuter. (Compl. 3, ECF No. 1.) On November 7, 2016, Deputy Reuter testified at a preliminary hearing admitting that he did not write a police report in the matter. (Id.) Plaintiff contends that Deputy Reuter blatantly perjured himself on the witness stand and did not accurately account for his assault on Plaintiff with a baton and firearm. (Id.) Defendant Reuter admitted to not carrying or being trained to carry non-lethal taser equipment. (Id.) Plaintiff alleges that he was detained by Tulare County Sheriff's Department without a warrant and was hospitalized out of their jurisdiction in Fresno County with no charges brought against him by the County of Tulare. (Id.) Plaintiff states that he is being maliciously prosecuted, there is judicial misconduct and ineffective assistance of counsel, and he is "being literally tortured by [Tulare County Sheriff Department] staff without any physician care. (Id.) Plaintiff also alleges that he is locked in solitary confinement without legal cause or grievances. (Id.)

Plaintiff also alleges that on August 28, 2016, five police officers employed by the City of Porterville were dispatched to conduct an investigation into an officer involved shooting and criminal investigation of Plaintiff. (Id. at 4.) Officer Sokoloff arrested Plaintiff out of his jurisdiction at a Fresno Hospital without a warrant and did not testify at Plaintiff's preliminary hearing. (Id.) No officer who wrote a report has testified to support foundation for detention in Plaintiff's case. (Id.) Plaintiff alleges that body cam images, audio, photographs, and the blood

10

1 trail contradict Deputy Reuter's accounting of the use of lethal force. (Id.) Plaintiff contends that deadly force was used to detain him for a simple restraining order violation that was not in their jurisdiction. (Id.)

Finally, Plaintiff contends that he was improperly released from a hospital in Fresno into the custody of the Tulare County Sheriff on September 7, 2016. (Id at 5.) Plaintiff was released with a follow-up for removal of an "antibiotic spacer" and "bone graft in second surgery." (Id.) Plaintiff alleges that he was denied a licensed physician and has no surgery and no care for repeated complaints to jail staff of major internal bleeding, and tearing of his colon and stomach. (Id.) Plaintiff contends that he has been placed in solitary confinement without due process and has no access to legal resources or copying. (Id.) Plaintiff alleges that he has had numerous false disciplinary charges brought against him and staff "in the hole" are incompetent and malicious with no supervision. (Id.)

Plaintiff seeks an emergency evidentiary hearing to establish his need for medical care and his removal from the custody of the county and state. (Id. at 6.) Plaintiff alleges that his father is also being held unlawfully and seeks medical care for them both. (Id. at 7.)

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Further, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S.

658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

Although Plaintiff is seeking for an order requiring that he be provided with medical care while he is in custody, Plaintiff's complaint does not contain any allegations sufficient to state a claim based upon his conditions of confinement. Plaintiff has not named any defendant in the jail and his complaint is devoid of any factual allegations demonstrating the existence of a link, or causal connection to state a claim based on the denial of medical care. Plaintiff's conclusory allegation that he is being denied medical care fails to state a cognizable claim.

Also, a basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

Plaintiff is attempting to bring unrelated claims in this action and his claims regarding excessive use of force during his arrest cannot proceed in the same lawsuit as claims based on denial of medical care while he is in custody. Therefore, even if the Court were to find that Plaintiff's complaint stated an excessive force claim based upon his arrest, it would not provide a basis to grant Plaintiff's request for medical care while he is confined in Tulare County Jail. Additionally, granting the request for medical care while in custody would not remedy the allegation that excessive force was used against him during his arrest. 18 U.S.C. § 3626(a)(1)(A).

For these reasons, the Court recommends that Plaintiff's requests for emergency injunctive relief be denied.

# IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that Plaintiff Michael Alan Yocom has intentionally misled the Court by filing a fraudulent certification in support of his application to proceed in forma pauperis. The Court also finds that Plaintiff's complaint fails to state a cognizable claim that would provide jurisdiction to grant Plaintiff's motions for injunctive relief.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's application to proceed in forma pauperis be DENIED without prejudice as a sanction for filing a fraudulent certification in support of his application to proceed in forma pauperis; and

2. Plaintiff's motions for injunctive relief, filed March 27, 2018, and April 11, 2018, be DENIED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 10, 2018**

UNITED STATES MAGISTRATE JUDGE